UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

S.F.,

        Petitioner,

v.

DREW BOSTOCK, *Seattle Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operation, et al.*,

        Respondents.

Case No. 3:25-cv-01084-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Before the Court is Petitioner's Motion for Attorney Fees and Costs Under the Equal Access to Justice Act, ECF No. 36. For the reasons below, Petitioner's Motion is granted.

**BACKGROUND**

On October 7, 2025, this Court granted Petitioner's Writ of Habeas Corpus and ordered his immediate release from Respondents' custody. Op. & Order 10, ECF No. 33. This Court found that Respondents, in violation of Petitioner's due process rights, detained him without any significant likelihood of removal in the reasonably foreseeable future ("SLRRFF"). Op. & Order 8-9. Respondents failed to effectuate Petitioner's removal for twenty years, and Respondents provided only speculation that they could arrange a charter flight for Petitioner's removal. Op. & Order 8-9; *see also Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (outlining the SLRRFF

Page 1 — OPINION AND ORDER

standard, including the cumulative six-month period of presumptive reasonableness for a noncitizen's detention).

Petitioner now moves for attorney fees and costs under the Equal Access to Justice Act ("EAJA"), contending that Respondents' SLRRFF position was not substantially justified.

**DISCUSSION**

The EAJA authorizes the payment of attorney's fees to a prevailing party "in any civil action (other than cases sounding in tort)" against the United States, unless the government shows that its position in the underlying litigation "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Although the EAJA creates a presumption that fees will be awarded to a prevailing party, Congress did not intend fee shifting to be mandatory. *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995). The decision to grant EAJA attorney fees is within the discretion of the court. *Id.*; *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Fee awards under the EAJA are paid to the litigant, and not the litigant's attorney, unless the litigant has assigned his or her rights to receive the fee award to counsel. *Astrue v. Ratliff*, 560 U.S. 586, 596-98 (2010). The EAJA serves "dual purposes" to "remove the financial disincentive for individuals and small businesses challenging or defending against government regulatory conduct where the cost of attorneys may be prohibitive" and "to encourage challenges to improper government action as a means of helping to formulate better public policy." *In re Hill*, 775 F.2d 1037, 1040 (9th Cir. 1985).

The parties do not dispute that Petitioner is a prevailing party under the EAJA. Petitioner and Respondents raise two issues: (1) whether Petitioner's immigration habeas case is a "civil action" such that EAJA fees are available, (2) whether Respondents' position in this litigation was substantially justified, and (3) whether Petitioner's fee should be enhanced or reduced.

## I.    Availability of EAJA Fees

The EAJA does not explicitly define "any civil action," so courts often "look to the substance of the remedy sought, not the labels attached to the claim, in determining whether a proceeding falls within the term 'any civil action' of the EAJA." *Hill*, 775 F.2d at 1040-41.

In *Hill*, the Ninth Circuit held that a particular habeas corpus proceeding was a qualifying civil action under the EAJA. *Id.* 1041. In that case, the petitioner sought admission to the United States. *Id.* at 1039. His admission was denied, and he was referred for exclusion for "sexual deviation or mental defect" because of his "unsolicited statement that he was a homosexual." *Id.* He successfully challenged his exclusion with a habeas petition on grounds that the finding was not based on a medical certificate as required by statute. *Id.* He moved for fees under the EAJA. *Id.* Although the court ultimately denied the fee request on other grounds, his claim qualified as a civil action under the EAJA because it was "not merely a vindication of his own personal rights," but also those of other LGBTQIA2S+ individuals seeking admission to the United States. *Id.* at 1041-42. The lack of government-appointed counsel also weighed toward the EAJA applying in the petitioner's case, as did the lack of custodial or economic incentive to challenge the government's action. *Id.* at 1041.

By contrast, a criminal defendant's challenge to judicial deportation during sentencing is not a "civil action" within EAJA's scope. *United States v. Soueiti*, 154 F.3d 1018, 1019 (9th Cir. 1998). In *Soueiti*, a criminal defendant faced deportation in his sentencing for bank fraud. *Id.* at 1018-19. The district judge ultimately declined to order deportation, and the defendant then moved for attorney's fees under the EAJA. *Id.* at 1019. The Court held that the nature of the case and the substance of the remedy was inherently criminal, because, although deportation is generally "civil in nature," the petitioner was before the Court to be sentenced. *Id.* at 1019-20

Page 3 — OPINION AND ORDER

(stating although it is "hard to define 'civil action' broadly enough to embrace all its possible forms, . . . one definition that is always correct is that civil actions are those that are not criminal."). The court accordingly denied his claim for EAJA fees. *Id.* at 1019.

Other circuits have "read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention" because they are civil in nature. *See Daley v. Ceja*, 158 F.4th 1152, 1165-66 (10th Cir. 2025) ("Given that habeas has uniformly been understood as civil in virtually every area of law, it would be unusual for Congress to implicitly single out the attorneys' fees context as the sole area in which habeas is not civil."); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 435-36 (3d Cir. 2026) (stating the "[any civil action] provision clearly covers petitions for writs of habeas corpus from immigration detention"). The Second Circuit, which introduced the "substance of the remedy" test discussed in *Hill*, has unequivocally held that "a habeas proceeding challenging immigration detention[] constitutes a 'civil action' under the EAJA." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005) (limiting *Boudin v. Thomas*, 732 F.2d 1107 (2d Cir. 1984)). The Fifth and Fourth Circuits disagree, finding the EAJA inapplicable. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that habeas corpus proceedings are "hybrid actions" and that the EAJA does not apply to them) (quoting and citing *O'Brien v. Moore*, 395 F.3d 499, 505, 508 (4th Cir. 2005))).

The Ninth Circuit has considered EAJA fees in the context of civil immigration habeas claims but has not reached the question of EAJA's applicability. *See Ali v. Gonzales*, 237 Fed. App'x 128, 129-31 & n.2 (9th Cir. 2006) (remanding to assess prevailing party status under *Zadvydas*); *see also Montero v. Ilchert*, 780 F.2d 763, 765 (9th Cir. 1986) (declining to address government's position that "a habeas proceeding is not a civil action"). District courts in this Circuit, however, have endorsed *Daley* and EAJA's applicability to civil immigration habeas

proceedings. *See, e.g.*, *Malik v. Dosanj*, No. 26-00060, 2026 WL 638483, at *1, 4 (D. Haw. March 6, 2026) (citing EAJA's applicability to a petitioner's challenge that his detention was impermissibly prolonged under *Zadvydas*); *Dieng v. Hermosillo*, No. 26-cv-00190, 2026 WL 411857, at *9 (W.D. Wash. Feb 13, 2026); *Espinoza Palacios v. Hermosillo*, No. 26-cv-491, 2026 WL 686138, at *11 (W.D. Wash. March 11, 2026). The Court agrees that EAJA fees are generally available in immigration habeas proceedings like the one here.

The "substance of the remedy" test establishes that Petitioner here is entitled to fees. Respondents contend that the substance of the remedy in this case is criminal because both Petitioner here, and the criminal defendant in *Soueiti* sought relief to avoid removal. But *Soueiti*, by its terms, established no such broad rule with respect to *civil* claims challenging removal. 154 F.3d at 1019 ("Sentencing in a criminal case is criminal. That is really all there is to this case.") Petitioner here seeks relief from his immigration detention unlike the criminal sentencing at issue in *Soueiti*. Regardless, the Court disagrees with Respondents' attempt to characterize Petitioner's action as one "where only his individual rights" were at issue. Resp to Mot. Fees 4, ECF No. 43. Petitioner, though obtaining his own release from custody, prevailed because Respondents detained him without any actual likelihood of removal. Petitioner's success vindicates the rights of those who would similarly be indefinitely detained based on a speculative possibility of removal. *See Hill*, 775 F.2d at 1040 (stating the EAJA "encourage[s] challenges to improper government action as a means of helping to formulate better public policy.")

Petitioner's case also has more in common with *Hill*. Both cases involved immigration habeas claims generally categorized as civil. Like the petitioner in *Hill*, Petitioner was not given government-appointed counsel. *See* 8 U.S.C. § 1362. Although Petitioner's twenty-year presence in the United States may bring more custodial and economic incentives to challenge his re-

Page 5 — OPINION AND ORDER

detention and removal than the non-resident individual in *Hill*, that incentive does not serve to transform Petitioner's action into a criminal one. As the Second Circuit put it, immigration habeas petitions have meaningful differences with criminal habeas petitions: "[Noncitizens,] unlike criminal defendants, are not eligible for government-provided counsel (and thus have greater need for a financial incentive), and . . . immigration claims often present not merely a vindication of the petitioner's personal rights, 'but a challenge to a regulatory policy,' and thus better serve the goal of formulating public policy." *Vacchio*, 404 F.3d at 669 (quoting and discussing *Hill*, 775 F.2d at 1040-41). Such is the case here. The plain text of the EAJA, as well as the substance of Petitioner's remedy, establish that this case is a "civil action" under the EAJA.

## II.    Substantial Justification of the Respondents' Position

Petitioner asserts that Respondents' position lacked substantial justification because Petitioner's detention exceeded the presumptively reasonable time limit of six months, and because there was no SLRRFF, as outlined in *Zadvydas*. Respondents contend that detention of Petitioner's removal was justified because it was premised on this Court's alleged lack of jurisdiction, and because Petitioner's "eleventh hour" SLRRFF challenge did not render the government's position substantially unjustified. As explained below, Respondents have failed to meet their burden to demonstrate that their position was substantially justified at each stage of the proceeding.

"The government bears the burden of demonstrating substantial justification." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (quoting *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). The government must justify both the "'underlying government action at issue' and the government's position defending that action in court." *Al-*

*Harbi v. INS*, 284 F.3d 1080, 1084 (9th Cir. 2002) (quoting *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990)). "The government's position is 'substantially justified' if it 'has a reasonable basis in law and fact.'" *Thangaraja*, 428 F.3d at 874 (citation omitted). The reasonableness standard is met if the government's position is "justified in substance or in the main" or "to a degree that could satisfy a reasonable person." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001) (citation and quotation marks omitted); *Lewis*, 281 F.3d at 1083.

The government's failure to prevail on the underlying issues is not dispositive of whether the government's position was "substantially justified." *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988). "The government's position must be 'substantially justified' at 'each stage of the proceedings.'" *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998) (quoting *Williams v. Bowen*, 966 F.2d 1259, 1261 (9th Cir. 1991)).

Respondents argue that their position was justified because Petitioner did not initially raise his SLRRF challenge until after he filed his initial habeas petition. Whatever the merit of the Respondents' responses to Petitioner's initial arguments, they do not establish that it was reasonable for Respondents to detain Petitioner, potentially indefinitely, based on mere speculation that it could obtain a travel document to remove him. *See* Op. & Order 9. The Court's findings in this case underscore that Respondents' actions were unreasonable: Respondents failed to remove Petitioner for nearly twenty years after issuance of his removal order. Respondents put forth no evidence to indicate that removal to Iran, a country the United States was then, and is now,[1] in military conflict with, was likely. Respondents' arguments that

---

[1] Clayton Thomas, et al., Cong. Rsch. Serv., R48887, U.S. Conflict with Iran, (March 26, 2026). The Court takes judicial notice of the United States's conflict with Iran because it is a matter of

Petitioner should be detained to assure his presence for removal ignored his long-standing ties in Oregon and consistent appearance at his check-ins with U.S. Enforcement and Removal Operations. Op. & Order, 8-9. In short, Respondents' initial litigation positions do not establish that their actions or subsequent litigation positions were reasonable. Respondents must substantially justify their actions and their position at "each stage of the proceedings." *See Corbin*, 149 F.3d at 1052. Respondents have failed to do so, and Petitioner is therefore entitled to attorney fees under the EAJA.

## III.    Fee Calculation

### A.    Reasonableness of the Proposed Fee

Petitioner is entitled to a reasonable fee at the market rate under the EAJA. 28 U.S.C. § 2412(d)(2)(A). Generally, such an award cannot exceed the statutory rate[2] unless justified by "a special factor, such as the limited availability of qualified attorneys for the proceedings involved." *Id.* § 2412(d)(2)(A)(ii); *Underwood*, 487 U.S. at 571-72.

#### 1.    Enhanced Fee

The prevailing party must satisfy a three-part test to receive an enhanced fee for specialized skill: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty"; (2) "those distinctive skills must be needed in the litigation"; and (3) "those skills must not be available elsewhere at the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). An attorney's specialty in immigration law "could be a special factor

---

public record and not subject to reasonable dispute. *See Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012)

[2] The 2025 adjusted statutory hourly rate is $258.46. United States Courts for the Ninth Circuit, Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ [https://perma.cc/X6V3-B4SB].

warranting an enhancement of the statutory rate," but such specialized skill must be "'needful for the litigation in question.'" *Rueda-Menicucci v. INS*, 132 F.3d 493, 496 (9th Cir. 1997) (quoting *Underwood*, 487 U.S. at 572).

The skills, knowledge, experience, and qualifications of Petitioner's counsel ("Counsel") are not reasonably disputed. *See* Purcell Decl. ¶¶ 2-3, ECF No. 37. The first requirement under the three-part *Love* test is therefore satisfied.

The Court also finds that Counsel's skills were necessary in this case, satisfying the second part of the *Love* test. Counsel's experience enabled him to file the petition on an emergency basis. Purcell Decl. ¶ 12 (stating Counsel filed the petition just 2.5 hours after Respondents detained Petitioner but 1.5 hours before Petitioner was moved out of state). This case also raised challenging jurisdictional, substantive, and procedural issues in oral arguments and evidentiary hearings such that a lawyer with specialized immigration knowledge was necessary for Petitioner's claim. *See Escobar-Grijalva v. INS*, 206 F.3d 1331, 1335 (9th Cir. 2000) (describing the immigration code as a "labyrinth almost as impenetrable as the Internal Revenue Code").

Finally, Petitioner contends that the skills and experience necessary to complete the work in this case were not available elsewhere at the normal statutory rate. Petitioner puts forth uncontroverted evidence that other experienced immigration attorneys would not accept this case at the normal statutory rate. *See* Marandas Decl. ¶¶ 3-5, 9, ECF No. 38; Renison Decl. ¶¶ 5, 9, ECF No. 39; Purcell Decl. ¶ 9. Oregon also has relatively few experienced immigration attorneys available to take cases like Petitioner's. Purcell Decl. ¶¶ 6-8, 10 (stating only 25 lawyers regularly accepted this type of work in the District of Oregon at the time, substantially fewer lawyers than the 319 members of the Oregon Chapter of the American Immigration Lawyers

Association). The Court therefore finds that counsel with similar skills and knowledge would not have been available elsewhere at the normal statutory rate, satisfying the final *Love* requirement.

Petitioner is entitled to the enhanced fee in this case because each factor under the *Love* test has been satisfied. A court looks to the prevailing rates of the community and the experience and skill of counsel in that community when considering the amount of an enhanced fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013). "Courts in this District rely on the most recent Oregon State Bar (OSB) Economic Survey as the 'initial benchmark.'" *Kathrens v. Bernhardt*, 505 F. Supp. 3d 1085, 1091 (D. Or. 2020).

Petitioner proposes a rate of $500 per hour for the work completed in this case. Respondents do not dispute the amount of the fee. The Court agrees with Petitioner that the state of Oregon is the most appropriate locality to assess the fee considering the locations of Petitioner (Beaverton), his counsel (Portland), and this Court. Mot. Attorney Fees & Costs ("Mot. Fees") 8-9, ECF No. 36. Petitioner's proposed rate is above the inflation-adjusted mean[3] rate for a lawyer in Oregon with similar years of experience ($416) but well below the 95th percentile ($782) from the OSB Economic Survey. Mot. Fees 9; Purcell Decl. ¶¶ 2, 3. Petitioner's rate is also higher, but not excessively higher, than the average rate for Oregon lawyers practicing business and corporate litigation, which Petitioner believes reflects rates paid for complex work like immigration litigation. Mot. Fees 8-9.  Considering the complexity of Petitioner's case as well as the subject matter at issue and the relatively few attorneys available to practice complex

---

[3] Respondents take no issue with Petitioner's inflation adjustment calculations which were preformed using the Bureau of Labor and Statistics Inflation Calculator. Bureau Lab. & Stat., CPI Inflation Calculator, https://data.bls.gov/cgi-bin/cpicalc.pl. The Court takes notice of the Inflation Calculator, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010), and finds the inflation adjustments are reasonable.

immigration law in the community, the Court finds that Petitioner's proposed enhanced rate is reasonable.

### 2.    Reasonable Hours Spent

The fee award is typically calculated by multiplying the rate by the hours spent. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Courts must "exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The prevailing party should provide documentary evidence concerning the hours spent. *Id.*

Petitioner submitted the time and hours spent on this case. Mot. Fees, Ex. 1 ("Time & Costs Log"), ECF No. 36-1. Respondents do not object to any specific time entry. Respondents argue that the hours for any fee award should be reduced because Petitioner delayed in asserting that his detention was unreasonable under *Zadvydas*. The Court declines to reduce the fees to work related to Petitioner's SLRRF arguments because that approach is disfavored in EAJA cases. *Comm'r INS v. Jean*, 496 U.S. 154, 161-62 (1990) ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."). The Ninth Circuit rejects an approach that reduces EAJA fee awards to reflect only a litigant's successful claims. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (9th Cir. 2019) ("[T]he court's rejection of or *failure to reach* certain grounds is not a sufficient reason for reducing a fee. The result is what matters.") (emphasis in original) (quoting *Hensley*, 461 U.S. at 435).

The Court has reviewed the hours submitted by Petitioner and finds that they are reasonable. Respondents identify no specific objection to Petitioner's time log, and the hours are not excessive, redundant, or unnecessary. The product of the reasonable hours spent (50.55) and the enhanced rate ($500) is $25,275. *See* Time & Costs Log.

**B.     Costs**

The EAJA also allows prevailing parties to recover litigation expenses and costs. 28 U.S.C. §§ 2412(a)(1), (d)(1)(A). Expenses include things normally billed to a client. *Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985).

Petitioner seeks recovery of $711.95 for filing and transcript costs. Mot. Fees 10. A review of Petitioner's records, and the Court's filing fee, documents $711.50 in costs. Time & Costs Log; ECF No. 1. The discrepancy results from a slight error in Petitioner's cost to obtain the transcript for the July 10, 2025, hearing. *Compare* Mot. Fees 10 (listing $203.50) *and* Time & Costs Log (documenting $203.05). The Court awards the amount of costs documented by Petitioner's evidence, $711.50.

## CONCLUSION

For the reasons discussed above, Petitioner's Motion for Attorney Fees and Costs Under the Equal Access to Justice Act (ECF No. 36) is GRANTED. Accordingly, Petitioner is entitled to an award of $25,275.00 in attorney fees, as well as $711.50 in costs against Respondents.

DATED this 5th day of May 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge

Page 12 — OPINION AND ORDER